## Richmond.

# The Chesapeake and Ohio Railway Company v. B. W. Crum and J. H. Boward, Partners, Trading as B. W. Crum & Company.

### November 13, 1924.

1. Instructions—*Duty to Instruct if Requested—Error to Instruct where there is no Evidence to Support.*—While it is palpable error to give an instruction where there is no evidence to support it, as such an instruction simply tends to mislead the jury, yet wherever there is evidence before the jury which would support a verdict upon a motion to set it aside, the court is obliged to instruct if requested so to do.

2. Instructions—*Negligence—Sudden Emergency—Collision between Automobile and Locomotive at Crossing.*—In the instant case, an action arising out of a collision between plaintiff's truck and an engine of the defendant company, it appeared from the evidence that the driver of the truck was confronted by two known dangers, namely a ditch on the side of the road and the engine of defendant. In this position of peril he was placed, through no fault of his own, by the negligence of the defendant, not united with his own negligence.

   *Held:* That under these circumstances the trial court was warranted in giving an instruction upon the law of negligence where one is required to act in a sudden emergency.

3. Negligence—*Sudden Emergency—General Rule.*—The law does not require of a person who is required to act in the face of a sudden danger that his act be infallible, nor even that he act wisely.

4. Negligence—*Sudden Emergency—Crossings—Collision between Automobile and Truck—Case at Bar.*—In the instant case, an action arising out of a collision between plaintiff's truck and a locomotive of defendant company, the driver of the truck was confronted with the choice of trying to stop the truck or of turning from the road into a two foot ditch along the side of the road. He chose the former alternative.

   *Held:* That though it was possible that the driver erred in his judgment, yet it is for such errors of judgment that the law makes allowances.

5. Crossings—*Failure to Give Signals—Question for the Jury—Negative Evidence.*—In the instant case, an action arising out of a collision be-

tween plaintiff's truck and a locomotive of defendant company, the question of defendant's negligence was correctly submitted to the jury where three witnesses testified that the truck was halted within fifty feet of the track and that they looked and listened and that the whistle did not blow and the bell did not ring, notwithstanding the contention of defendant's counsel that on the question of the failure of the defendant to give the signals, the evidence was negative evidence.

6. Negligence—*Objection to Instruction that it Left the Jury Free to Consider any Question of Negligence whether or not Pleaded or Proved.*— In an action arising out of a collision between plaintiff's truck and the locomotive of defendant at a crossing, the court instructed that in order for the plaintiff to recover he must show that the defendant was negligent, and that its negligence was the sole proximate cause of the injury, that when this is shown, plaintiff is entitled to recover, unless it appears that the plaintiff was guilty of contributory negligence.

   *Held:*   That this instruction was not open to the objection that it was a general statement of the law, leaving the jury free to consider any question of negligence, whether or not pleaded or proved.

7. Crossings—*Collision between Automobile and Truck—Instructions—Snow on Road—Case at Bar.*—In the instant case, an action arising out of a collision between plaintiff's truck and defendant's locomotive, the court instructed the jury that, if the driver of the truck applied his brakes and the truck would have been stopped in time but for the snow on the roadway and a driver of ordinary prudence would have known that the snow would have prevented the truck from stopping, then it was the duty of the driver to take precautions commensurate with the added peril. That the snow, which was slight, contributed to the accident was but an inference. There was no evidence to that effect.

   *Held:*   That the instruction was more favorable to the defendant than the evidence warranted.

8. Crossings—*Collision between Automobile and Truck—Instructions—Snow on Road—Proximate Cause—Case at Bar.*—In the instant case, an action arising out of a collision between plaintiff's truck and defendant's locomotive, the trial court was asked to instruct that if the driver of the truck applied his brakes and the truck would have been stopped in time, but for the snow on the roadway, then there was no liability upon the defendant. The snow was slight and that it contributed to the accident was but an inference. The argument to sustain the instruction was based on the idea that the snow was a "supervening cause."

   *Held:*   That there was no error in refusing this instruction, as the snow was in no sense a supervening cause, but merely a condition which should have enhanced the degree of care to be exercised by both parties.

9. Negligence—*Proximate Cause—Supervening Cause.*—To constitute a cause a supervening one, it must be a new effective cause which, operating independently of anything else, becomes the proximate cause of the accident.

10. Negligence—*Definition.*—Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation.

11. Crossings—*Contributory Negligence—Duty to Stop.*—An automobile driver is not guilty, as a matter of law, of contributory negligence for failure to stop his machine before going on the crossing, especially in consideration of the provision of section 3959 of the Code of 1919 and Acts of Assembly, 1922, page 559.

12. Crossings—*Contributory Negligence—Care to be Exercised on Approaching Crossing.*—The degree of care and caution to be exercised by a person approaching a crossing depends upon the facts and circumstances of the particular case, and this may or may not involve the duty to stop in order to look and listen.

13. Crossings—*Instructions—Duty to Look and Listen—Duty to Stop—Noise of Automobile—Case at Bar.*—In the instant case, an action arising out of a collision at a crossing between plaintiff's truck and defendant's locomotive, the court instructed the jury that it was the duty of plaintiff to look and listen for approaching trains and if the conditions were such that looking and listening could not be effective, it was his duty to stop also, and that as to this circumstance the jury would consider to what extent the noise of the automobile could have prevented the hearing of the approaching train, the speed of the automobile, the condition of the air and any other fact which ought to have indicated to a man of ordinary prudence that he could or could not depend upon hearing alone.

    *Held:* No error, but if anything, unduly favorable to the defendant, as the evidence showed there was no noise from the engine of the automobile, and that there was no wind.

14. Contributory Negligence—*Questions of Law and Fact—Facts Disputed or Undisputed.*—Whether or not one has been guilty of negligence is a question to be determined by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence is conflicting.

15. Crossings—*Collision between Automobile and Truck—Failure to Give Signal—Evidence Sufficient to Support Verdict for Plaintiff.*—In the instant case, an action arising out of a collision between plaintiff's truck and defendant company's locomotive at a crossing, though denied in toto by the defendant, there was sufficient evidence upon the part of the plaintiff to show that the defendant disregarded its duty to ring the bell and blow the whistle when approaching the crossing; that it was running its train at a high rate of speed without

the exercise of due caution, and that plaintiffs' driver was not guilty of contributory negligence.

*Held:* That there was sufficient evidence to warrant a verdict for plaintiff.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Timberlake & Nelson* and *Curry & Curry,* for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

This is a proceeding by notice of motion, by the defendants in error (hereinafter called plaintiffs) against the plaintiff in error (hereinafter called defendant), to recover damages for the alleged injury to an automobile truck.

Upon the trial of the case a verdict was rendered in favor of the plaintiffs. Upon this verdict judgment was entered by the trial court, which we are asked to review.

On the day of the collision between the truck and the locomotive of the defendant, the truck was being driven by one J. H. Rankin, an employee of the plaintiffs. Rankin, on the day of the accident, was accompanied by F. C. Brooks, a young man who at the time was also in the employment of the plaintiffs. The truck was equipped with chains, the brakes were in good condition, and the driver's wheel was upon the left-hand side thereof.

The accident occurred on the morning of January 16, 1922, at a crossing east of the corporate limits of Staunton. The defendant's track at the place of the collision runs east and west, parallel with and at a distance of about 300 feet from a public road to the south, known as the "Richmond road." A stone quarry and a crusher are just to the north of the railroad, and it was to this quarry Rankin was going to secure a load of stone. A lane, called "Johnson's lane," leads from the Richmond road at right angles to and across the railroad track to the stone quarry. Just east of the crossing the track passes through a long, deep cut, with a curve in it, and a train coming from the east (as the train in question was) can be seen for the first time by a traveler going west (the direction Rankin was going) when he gets to a point within twenty-five or thirty feet of the crossing. The engineer of the westbound locomotive can see nothing of the crossing, or its southern approach, because of a curve against him, commencing about midway of the cut. The view of the fireman is cut off by the walls of the cut, but at about thirty-five feet east of the crossing he can see twenty-five to thirty feet along its southern approach.

In coming down Johnson's lane to the crossing, there is a point, before the hill through which the cut extends is reached, at which the traveler can see for a considerable distance toward the east. At a distance of fifty feet from the railroad track the view to the east is cut off by the hill, and the traveler must then depend upon his sense of hearing to warn him of an approaching train.

The condition of the weather and the ground, as testified to by F. C. Brooks, "was mighty quiet that morning and snow on the ground * * everything was still." As the plaintiff's truck approached the

crossing it was, according to the testimony of Rankin, running between seven and eight miles per hour. There is a conflict of evidence, however, as to the rate of speed of the train, the trainmen estimating it at twenty-five to thirty miles an hour, while other witnesses placed the same at a much greater rate.

The plaintiff's bill of particulars alleged in brief that the accident occurred by reason of the defendant's giving "no notice of the approach of its train by bell or whistle, although the train was running at a rapid rate down grade, with steam cut off."

The following grounds of defense were relied upon by defendant, viz.: "That it was not guilty of the alleged negligence; that the plaintiff's driver occasioned the accident by his negligence; that the accident occurred from a cause for which the defendant was not responsible, snow lying on the private road which caused the truck to slip or skid into the train."

The assignments of error are five in number.

The first assignment of error is that the court erred in instructing the jury at the instance of plaintiff, as follows:

"The court instructs the jury that a person who is required to act in a sudden emergency, even if he acts unwisely, is not guilty of negligence in law, since in case of sudden and unexpected danger, necessitating an immediate decision as to which of two or more ways of escape will be resorted to, the law makes allowance for errors of judgment, even though it appears that the resulting accident could have been avoided if the party so placed in peril had pursued a different course. But this rule has no application except in cases where the plaintiff has been placed in the situation of danger by the negligence of the defendant, not united with his own negligence."

It is contended by the learned counsel for the defendant that this instruction, stating the doctrine applicable to acts in emergency, was not pertinent to anything in the evidence; that the same is but a mere abstract statement of law and is without evidence to base it upon.

[1] If this contention be sound, it was palpable error to give the instruction, as an instruction without evidence to support it simply tends to mislead the jury. *Southern Ry. Co.* v. *Bruce*, 97 Va. 92, 33 S. E. 548, *Southern Ry. Co.* v. *Mason*, 119 Va. 256, 263, 89 S. E. 225. "* * but wherever there is evidence before the jury which would support a verdict upon a motion to set it aside, the court is obliged to instruct if requested so to do." *Carpenter* v. *Smithey*, 118 Va. 547, 88 S. E. 325.

[2] In passing upon this assignment of error, we are of the opinion that there is evidence tending to prove the facts upon which the instruction is predicated. J. H. Rankin, the driver of the truck, testified, in substance, that before he got to the point where the hill obscures the view toward the east, he looked and saw "no train coming," that when he got within fifty feet of the crossing there were "no trains coming," that while he did not stop the truck, he practically came to a stop and cut off the power from the engine, so there would be no noise to interfere with his hearing the blowing of the whistle or the ringing of the bell of an approaching train; that near the crossing on the left-hand side of the road was a little ditch possibly two feet deep and a bank on the far side thereof, which rendered it practically impossible to cross with the truck. On cross-examination the witness was asked why he had not turned the truck to the left when within twenty-

five feet of the crossing.    His testimony on this point
is:

"Q. Now couldn't you in that twenty-five feet have
gone to your left?

"A. No, I couldn't; because there was a little bank
there and a ditch.

"Q. About how deep was it?

"A. I don't know exactly.

"Q. Was it about a foot and a half or two feet?

"A. About two feet, maybe.    It is too deep for a
wheel to go over.    I am talking about that little bank
to the left there, and it just slopes on down too far to
go over it."

It is thus seen that the driver of the truck was con-
fronted by two known dangers—the ditch and the
engine.    In this position of peril he was placed—
through no fault of his, if his testimony is worthy of
credit—by the negligence of the defendant, not united
with his own negligence.

[3, 4] The law does not require of a person who is
required to act in the face of a sudden danger, that his
act be infallible, nor even that he act wisely.    What
the driver did do, as stated by him, is as follows:    "I
looked on up the track again and that old train was
coming, *and I tried to stop*, but I couldn't then, after I
seen it coming."    (Italics supplied.)

Further on in the examination, the witness was asked:

"Q. Now when you saw the train coming, what did
you do?

"A. Why, I tried to stop.    I put the brakes on when
I seen it coming and I cut the wheel to the left a little
just as I got to the track, and when the train come on
by, the front wheel was right up against the track and
it knocked it to pieces and carried it on down the track,
what was left."

Of course, a two foot ditch may not be an insurmountable barrier, and under the circumstances it is possible Rankin erred in his judgment, but as stated in the instruction, it is for such errors of judgment that the law makes allowances. There is no error in the action of the court in this regard, and this assignment is overruled.

The second assignment of error is to the court giving of its own motion instruction "A," as follows:

"In order for the plaintiff to recover he must show that the defendant was negligent and that his negligence was the sole proximate cause of the injury.

"When this is shown the plaintiff is entitled to recover unless it further appears that the plaintiff was also negligent and that his negligence contributed to the injury."

The objections to this instruction were, (a) that there was no proof that the defendant was negligent, (b) and that it was a general statement of rules of law, leaving the jury free to consider any question of negligence, whether or not pleaded or proved.

[5] As to the sufficiency of the evidence upon which to predicate the instruction, we have heretofore indicated our view in discussing assignment number one. In our opinion, under the evidence, the question of negligence was correctly submitted to the jury. We cannot concur in the view of counsel, that on the question of the failure of the defendant to ring the bell and blow the whistle, the evidence submitted by plaintiffs is of that character known as negative evidence. Both the witness, Rankin, and the witness, Brooks, stated that the whistle did not blow, that the bell did not ring, that the truck was halted within fifty feet of the track, and that they looked and listened. In this they are corroborated by H. T. Bragg, an insurance agent,

and a disinterested witness.    On this phase of the case he testified as follows:

"Q. Did you see this truck approaching the railroad crossing?

"A. Yes, sir.

"Q. How was it being run and operated?

"A. I saw the truck coming when it turned off the Richmond road into this lane.    It came down slowly off the road.    Of course, I never seen the train coming, but I always watch when I go through the cut to see if there is a train coming, and I suppose the truck was about as far from the track or crossing as across this room—fifty feet—maybe, and they seemed to check up the truck and I seen them look out and I looked too, but I didn't see anything and the truck then come right on down and they went together just like that (indicating).

"Q. Then you saw them stop the truck there, about fifty feet from the track?

"A. Yes, sir; they come almost to a stop there about a distance of fifty feet away and both looked out.

*      *      *      *      *      *      *      *      *

"Q. Up to, or about, the time of the collision had the engineer blown the whistle or rung the bell?

"A. No, sir; he certainly did not.    It blowed about the time they struck.    *    *    *"

Upon this evidence it was the duty of the court to submit the question of negligence to the jury.

[6] As to the second branch of the objection, the case of *Southern Ry. Co.* v. *Forgey*, 105 Va. 599, 54 S. E. 477, is relied on.

We do not think this case in point.    The instruction complained of in the case cited, speaking of defendant's negligence, contained this language, "were negligent in any one or all of these particulars, or otherwise, and

that such negligence resulted in damage," etc.    The court, disapproving the instruction, referred to its use of the words "or otherwise," and said:    "The instruction was manifestly erroneous.    It submitted to the jury questions of negligence, not alleged in the declaration, as well as a question of negligence which was alleged, but of which there was no proof."

The instruction under consideration did not undertake to specify certain particular acts of negligence and then open the gateway for the jury to consider negligent acts committed "otherwise," though not alleged or proved, but was the usual statement of the law in regard to negligence on the part of the defendant and contributory negligence on the part of the plaintiff. We discover no merit in this assignment of error.

[7, 8] Third assignment of error.    It is submitted that the trial court erred in refusing instruction "Y" requested by the defendant, which is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiffs' driver applied the brakes when he saw the defendant's train approaching, and that the truck thereby would have been stopped in time to have avoided collision but for the snow on the roadway on which the truck was traveling, then there is no liability in this case upon the defendant and the jury should find for the defendant."

In lieu of this instruction, the court of its own motion instructed the jury as follows:

B. "The court instructs the jury that if they believe from the evidence that the plaintiffs' driver applied the brakes when he saw the train approaching and that the truck thereby would have been stopped in time to have avoided the collision but for the snow on the roadway on which the truck was traveling, and that a driver of ordinary prudence would have known that the snow

would have rendered ineffective the operation of his brakes, then it was the duty of the driver to take precautions commensurate with the added peril, and if he failed so to do this, there can be no recovery."

Instruction "Y" was intended to submit to the jury the question whether there was an intervening and superseding cause of the accident, to-wit, the snow on the ground.

Disposing of the exception as to the action of the court in giving instruction "B," we are of the opinion the instruction was more favorable to the defendant than the evidence warranted. That the snow, which was slight, contributed to the accident is but an inference; there is no evidence to that effect; there is no testimony as to whether the road was metal or dirt; the truck had chains on it and Rankin, the driver, stated when asked the question if the truck skidded: "I don't reckon it did. I didn't see it. I couldn't tell what the hind wheels were doing, though—I didn't have time to look." Upon this evidence alone instruction "B" was based.

[9, 10] In the refusal of the court to give instruction "Y" there is no error.

The argument to sustain this instruction is based on the idea that the snow on the ground was a "supervening cause." To constitute a cause a supervening one, it must be a new effective cause which, operating independently of anything else, becomes the proximate cause of the accident. The presence of the snow on the ground, which may have lain on the ground for days, as far as the proof shows, was in no sense to our mind a supervening cause. It was merely an existing condition which should have enhanced the degree of care to be exercised by the driver of both the locomotive and of the truck in approaching the crossing. Its existence

was simply a circumstance entering into the solution of the question as to the negligence of the defendant or of the contributory negligence of the plaintiff, negligence being defined to be "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation    *    *." *Danville, etc.,* v. *Watkins,* 97 Va. 715, 34 S. E. 884.

The fourth assignment of error is to the refusal of the court to give instruction "Z" offered by the defendant, and the giving by the court of its own motion of instruction "C," as well as the giving of instruction "L-a" upon the motion of the plaintiff. These instructions are as follows:

"Z. The court instructs the jury that if they believe from the evidence in this case that the hill to the east of the lane on which the plaintiff's driver approached the track shut off from him the view of the railroad to the east until within twenty-five or thirty feet from the crossing, and that as he approached the crossing he could not see along the track until he was within twenty-five or thirty feet of it, then it was the driver's duty to stop his machine at such point on the lane before crossing the track as would enable him to look out to the east for an approaching train. And if the jury believe from the evidence that the driver did not stop the truck under these circumstances in order so to look, and if he had so stopped it and had looked he could have avoided the accident, then the jury must find for the defendant.

"C. It was the duty of the plaintiff to look and listen for approaching trains, and if the jury believe from the evidence that the conditions were such that looking and listening could not be effective, it was his duty to stop also. And in this connection they will consider to what extent if any the noise of the automo-

bile engine would have prevented the hearing of the approaching train, the speed of the automobile, the condition of the air, whether windy or still, and any other fact which ought to have indicated to a man of ordinary prudence that he could or could not with ordinary prudence depend upon hearing alone after his view had been cut off.

"L-a.    The court instructs the jury that the question as to whether the driver of the plaintiff's truck was guilty of contributory negligence in approaching the track is a question of fact for the jury.    And the burden of proving that he was guilty of contributory negligence rests upon the defendant and the defendant must prove it to the satisfaction of the jury by the greater weight of the evidence, unless such contributory negligence is disclosed by the plaintiff's own evidence, or may be fairly inferred from the circumstances of the case."

[11, 12] Instruction "Z" tells the jury that it was the duty of Rankin, the driver of plaintiff's truck, as a matter of law, to stop his machine before going on the crossing, and failing in this duty, the jury should find a verdict for the defendant.    If this instruction embodies a true principle of law, then many former decisions of this court will either have to be modified or overruled. As we recall the oral argument of the instant case, it was conceded that it was not only the custom but the duty of defendant to blow the whistle and ring the bell for this particular crossing.    No authority is cited to sustain the proposition contended for in this instruction, nor have we in our investigation been able to find any holding of this court to sustain the same.    It is true that this court held in *Washington & Old Dom. Ry.* v. *Zell,* 118 Va. 755, 88 S. E. 309, on the state of facts applicable to that case, that it was the duty of the driver

(of an automobile) to stop, if such stopping was essential to make looking or listening effective.    In delivering the opinion of the court, Judge Kelly said:

"Travelers approaching a public crossing must bear in mind that, while their rights and those of the railroad company at that point are 'mutual, reciprocal and co-extensive' in general, the law has always accorded, and in the nature of the case must accord, to a moving train the right of way.    *Southern Ry. Co.* v. *Torian*, 95 Va. 454, 28 S. E. 569; Elliott on Roads and Streets (3d ed.), section 1021, and cases cited in note 77; *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, 24 L. Ed. 403.

"A failure on the part of the railroad company to give proper warning or other lack of ordinary care will render the company liable, if its negligence is the proximate cause of any injury at a crossing and the injured party is without fault, 'but the track itself is a warning of danger, and a traveler must always exercise care proportionate to the known danger, and this case must be such as one who knows the danger and is aware of the prior right of passage would be expected to exercise." 3 Elliott on Railroads (1897) and cases cited in notes 1 and 3.

In the *Zell Case, supra,* the court only went to the extent of holding that *"If the running of his machine interfered with his hearing or looking,* it was his duty to *stop, look and listen* so as to make looking and listening effective."    (Italics supplied.)

Not only has this court heretofore failed to sanction the doctrine contended for in the instruction, but it has gone further and refused to sanction it.

In *Southern Ry. Co.* v. *Aldridge*, 101 Va. 142, 146, 43 S. E. 333, 334, Judge Keith, in delivering the opinion of the court, said: "This court has never decided that as a matter of law it was the duty of a person approach-

ing the crossing of a railroad to *stop*, look and listen for an approaching train. It has been said in numerous cases that the railroad track itself was a signal of danger, and imposed upon one approaching it the duty to look and listen, but it has in no case been held that it was his duty to stop in order to look and listen, or that it was his duty when in a vehicle to get out in order to look and listen.

"On the other hand, it has been said that the degree of care and caution to be exercised depended upon the facts and circumstances of the particular case, and we have had no occasion to say that in no case would a traveler be required to stop in order to look and listen."

Following numerous decisions on the subject, the last pronouncement of this court is found in *Payne* v. *Mason*, 139 Va. 260, 123 S. E. 519.

In view of previous decisions of the Supreme Court of Appeals as to the duty of a traveler when approaching a railroad crossing, we are in no sense inclined to enlarge the scope of the doctrine so firmly entrenched in our jurisprudence, especially in view of the fact that so to do we would by judicial legislation emasculate the solemn enactments of the legislative branch of the government, as contained in section 3959, Code of 1919, and Acts of Assembly, 1922, page 559, wherein it is provided, in section 3959, that the failure of a traveler to exercise due care is a matter to be considered by the jury only in mitigation of damages, and in the Acts of 1922, page 559, it is expressly stated that the failure of a traveler to obey the legal duty imposed upon him therein, to-wit: To stop before passing over the crossing, "shall not change or alter in any manner the existing law as to the duty or liability of railway companies for damages to persons or property,   *   *."

[13] In view of what has already been said in discussing instruction "Z," we do not think the court erred in giving of its own motion instruction "C." If anything, it is unduly favorable to defendant, as the evidence showed there was no noise from the engine of the automobile, and that there was no wind and the day was still.

The complaint lodged against instruction "L-a" is that it declares that contributory negligence "is a question for the jury." It is earnestly argued by counsel for the company that from the time of *Dun v. Seaboard Ry. Co.*, 78 Va. 645, 49 Am. Rep. 388, it has been held that where the facts were *admitted* or *undisputed*, a pure question of law is presented which it is the duty of the court to decide. In affirmance of this view is cited *Virginia Ry. & P. Co.* v. *Dressler*, 132 Va. 342, 111 S. E. 243, 22 A. L. R. 301, wherein Judge Burks, in delivering the opinion of the court, said:

"The facts which determine the relation of the defendant to the plaintiff are not disputed. On this question nothing is left for the determination of the jury. The rights, duties and liabilities of the respective parties present *a pure question of law* to be determined by the court, and the trial court erred in referring them to the jury."

The distinction between the cases cited, *supra*, and the instant case is too apparent to admit of lengthy discussion. In the cases relied on, the facts were either *admitted* or *undisputed*, and it was peculiarly the province of the court to pass upon the pure question of law. In the instant case, every major contention is disputed and not even a minor contention is admitted. The evidence upon the part of the plaintiffs has been repeatedly adverted to, and we will content ourselves in

stating that in almost every particular, witnesses for the defendant flatly contradicted this testimony.

[14] In *Winchester* v. *Carroll*, 99 Va. 727, 40 S. E. 37, the law is said to be that whether or not one has been guilty of negligence is a question "to be determined by the court when the facts are *undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed* or the evidence is conflicting." (Italics supplied.)

We are of the opinion that there is no merit in this assignment of error.

The last assignment to be passed upon relates to the refusal of the court to set aside the verdict as contrary to the law and the evidence. There is no merit in this assignment of error.

[15] Though denied *in toto* by the defendant, there is sufficient evidence upon the part of the plaintiff to show that the defendant disregarded its duty to ring the bell and blow the whistle when approaching the crossing; that it was running its train at a high rate of speed without the exercise of due caution; that the plaintiff's driver, Rankin, was not guilty of contributory negligence.

We are of the opinion that the verdict of the jury was warranted by the evidence, and therefore the judgment of the trial court should be affirmed.

*Affirmed.*