**KONINKLYKE NEDERLANDSCHE STOOMBOOT MAALSCHAPPY, N.V., ROYAL NETHERLANDS STEAMSHIP COMPANY, Appellant,**

v.

**STRACHAN SHIPPING CO., Appellee.**

**No. 19181.**

United States Court of Appeals
Fifth Circuit.

June 20, 1962.

Clarence S. Eastham, Houston, Tex., William M. Kimball, Burlingham, Hupper & Kennedy, New York City, Eastham, Watson, Dale & Forney, Houston, Tex., for appellant.

Henry D. Akin, Dallas, Tex., E. D. Vickery, Royston, Rayzor & Cook, Houston, Tex., Leachman, Gardere, Akin & Porter, Dallas, Tex., of counsel, for appellee.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

The appellee Strachan Shipping Co. insists that our decision is irreconcilably in conflict with Kent v. Shell Oil Co., 5 Cir., 1961, 286 F.2d 746, thus:

"In Kent a recovery based on a 'federal judicially-established maritime contractual warranty' was prevented by a state compensation act, while the majority in this case holds that a recovery based on a 'federal judicially-established maritime contractual warranty' cannot be prevented by a state compensation act."

It should be pointed out first, that if there is a conflict, it is not a direct one. The present issue of a third party indemnity against the employer of the injured party was not, and indeed could not have been, reached in Kent since the injured party was not allowed to proceed to judgment against the third party. Further, the primary ground for decision in Kent was that no maritime issue was presented since the injury was land based and nonmaritime in character. As an added ground for decision, the Court held that even if an unseaworthiness claim were established, it also could be cut off by the Louisiana Compensation Act, LSA–R.S. 23:1032, 23:1061. Thus the appellee has a considerable burden in attempting to construct an irreconcilable conflict.

In stating the conflict quoted above the appellee appears to be arguing two separate theories: 1) that the right of the injured party to sue on an unseaworthiness claim is based upon a "federal judicially-established maritime contractual warranty" which Kent held could be cut off by state law—ergo, why cannot the warranty sued on by Royal be controlled by Texas; and 2) since Texas may control all the rights and liabilities to the contract of employment between the injured party and his employer, it is inconsistent to deny it control over the liability of the employer to a third party growing out of the employee's claim.

In arguing that unseaworthiness is based upon a contractual warranty, the appellee misconstrues the law to a certain extent to aid the creation of its irreconcilable conflict. In Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099, the Supreme Court dealt with this issue in refuting the allegation that unseaworthiness requires a contractual relationship between the injured party and the shipowner. The Court held that the doctrine was not limited to the narrow confines of con-

tract but was an incident to "performing the ship's service with the owner's consent," 328 U.S. at 92–97, 66 S.Ct. at 876, 878, which could not be delegated or contracted away, id. at 100, 66 S.Ct. at 880.

Under either of the appellee's theories, however, the problem is essentially the same: whether the acknowledged efficacy of the Texas compensation act to control the rights and liabilities between the injured party and his employer extends to control over the independent rights of the vessel owner on the stevedoring contract. While the appellee argues that Kent decided this issue, the very language relied upon shows that the Court there went no further than the question of the employee's rights.[1] The issue of the vessel owner's rights is of first impression here and stands or falls on analysis of the rights asserted.

The heart of the appellee's argument is that Royal's indemnity is derivative from and based upon the injured employee's rights, and since West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W.2d 451, holds that the Texas Compensation Act bars an action attempting to compel the employer to pay "indirectly when no liability existed to pay directly," no indemnity will lie. The word "indirectly," however, relates to the nature of the third party's cause of action, and not to the mere fact that the amount recovered by the injured party may eventually be paid by his employer. The distinction is made clear by the dissent in Ryan Stevedoring Co. v. Pan Atlantic Co., 1956, 350 U.S. 124, 135, 76 S.Ct. 232, 100 L.Ed. 133, upon which the appellee relies in its brief on motion for rehearing. There Justice Black argues not that a contract warranty is an "indirect" recovery against the employer or a recovery "on account of" the injury to the longshoreman, but that no such contract warranty should be implied.[2] The Justice concedes that having found the contract action, a new and independent action exists not barred by the federal compensation act. 350 U.S. at 141, 76 S.Ct. 241. This same analysis has been applied by other courts in allowing an indemnity in spite of similar language in their state compensation acts. Thus in Westchester Lighting Co. v. Westchester County Small Estates Corp., 1938, 278 N.Y. 175, 15 N.E.2d 567, the New York court held that "an independent duty or obligation owed by the employer to the third party is a sufficient basis for the action," 15 N.E.2d 569. Similar such independent duties were found in McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo.1959, 323 S.W.2d 788; American President Lines v. Marine Terminals Corp., 9 Cir. 1956, 234 F.2d 753; General Electric Co. v. Moretz, 4 Cir. 1959, 270 F.2d 780. Where a state court disagreed with the argument that there was an independent duty or a contract warranty permitting the indemnity, it did not call the duty "indirect" but held that under the applicable law it did not exist. See Hunsucker v. High Point Bending & Chair Co., 1953, 237 N.C. 559, 75 S.E.2d 768, 774.

Thus the appellee's only logical argument from the basis of the Texas cases is that if the issue of an implied contractual warranty for workmanlike

---

1. "Unlike many other compensation acts, the Louisiana statute regulates *more* than the rights as between the injured employee and his employer. Under some circumstances it controls the right of such injured worker against a third party not his employer." Kent v. Shell Oil Company, 5 Cir., 1961, 286 F.2d 746, 750.

2. "As between wrongdoers the courts will under some circumstances impose the total liability on the 'primary' or 'active' wrongdoer, apparently meaning the wrongdoer the court deems to be the most negligent. But indemnity so imposed is plainly 'on account of' the negligence of the wrongdoer or his employees. The Act expressly forbids such a recovery by 'anyone' from a stevedoring company 'on account' of an injury to one of its longshoremen. Plainly, common-law indemnity should not be used to fasten such a liability on a stevedoring company. I suppose it is for this reason that the Court purports to find an actual contract to indemnify * * *." 350 U.S. at 142, 76 S.Ct. at 242.

performance came before the Texas courts, they would hold that it did not exist. It is at this point, however, that maritime law controls. Ryan, supra, conclusively decided that a stevedoring company gives an implied contractual warranty to perform services in a workmanlike fashion; it is, therefore, no longer open to the Texas courts to determine otherwise no matter what they might decide with respect to contracts controlled by state law. Having found such a warranty, it is no longer open to the appellee to argue that indemnity is "indirect" in terms of the Renner case. Nor do we see under any circumstances how Texas could cut off Royal's contractual rights in the absence of federal statutory authority to that effect once a judicially-established maritime rule prevails.

The appellee also argues that we misinterpreted the case of Westfall v. Lorenzo Gin Co., Tex.Civ.App.1956, 287 S.W. 2d 551. The appellee points out that Art. 8306, Sec. 5, Vernon's Ann.Civ.Stat. (in accord with provisions of the Texas Constitution, art. 16, § 26, Vernon's Ann.St.) specifically provides for recovery against the employer in the case where the employer's gross negligence caused the death of one of his employees, and that the Westfall court was undoubtedly referring to this exception when it used the language relied upon in our main opinion. However, since the injured party in Westfall was alive, and the court did not mention Art. 8306, Section 5, we see no reason why we should make such an assumption. While Jones v. Jeffreys, Tex.Civ.App.1952, 244 S.W.2d 924, holds that a living injured employee cannot recover from his employer for gross negligence, we do not feel that it is dispositive of the rights of a third party asking for an indemnity on the same grounds. Even assuming we are in error, however, our decision on the issue in this case would be unaffected.

The petition for rehearing is

Denied.

CAMERON, Circuit Judge, dissenting.