Hezekiah McCROSS
v.
RATNAKAR SHIPPING CO., Ltd.
v.
TERMINAL SHIPPING COMPANY.

James BOOKER
v.
SAANUM, EINAR (SKIBS A/S AGNES)
v.
NACIREMA OPERATING COMPANY.

William RANDOLPH
v.
CENTRAL GULF STEAMSHIP CORP., a body corporate,
and
Lawrence E. Wilson
and
Central Gulf Steamship Corp.
v.
TERMINAL SHIPPING COMPANY
and
Maryland Port Authority.

Julia T. KLOSEK, surviving widow of Joseph J. Klosek, deceased, to her own use and to the use of her minor children,
and
Julia T. Klosek, Administratrix, Estate of Joseph J. Klosek
v.
BETHLEHEM STEEL COMPANY, a body corporate
v.
NACIREMA OPERATING COMPANY, Inc.

William H. JOHNSON
v.
BETHLEHEM STEEL COMPANY, a body corporate
v.
NACIREMA OPERATING COMPANY, Inc.

Milton J. LEJK
v.
YAMASHITA–SHINNAHON STEAMSHIP COMPANY
v.
PATAPSCO SHIP CEILING & STEVEDORE COMPANY.

Leroy M. PARKER for himself and to the use of Pennsylvania National Mutual Insurance Company
v.
JAPAN LINES, LTD.
v.
TERMINAL SHIPPING COMPANY.

March 16, 1967.

Admiralty Nos. 4897, 4931, 4997; Civ. Nos. 15956, 15957, 17105, 17705.

United States District Court
D. Maryland.

March 16, 1967.

Raymond J. Cardillo, Fried & Cardillo, Baltimore, Md., for plaintiff in Admiralty No. 4897.

Howard Fine and Raymond J. Cardillo, Fried & Cardillo, Baltimore, Md., for plaintiffs in Admiralty Nos. 4931 and 4997.

John J. O'Connor, Jr., O'Connor & Preston, Baltimore, Md., for plaintiffs in Civil Nos. 15956 and 15957.

Fred Ginsberg and Eugene V. Chircus, Baltimore, Md., for plaintiff in Civ. No. 17105.

Maurice J. Pressman and Louis G. Close, Jr., Baltimore, Md., for plaintiffs in Civ. No. 17705.

Southgate L. Morison, Ober, Williams & Grimes, Baltimore, Md., for defendant and third-party plaintiff in Admiralty No. 4897.

Carlyle Barton, Jr. and Donald A. Krach, Niles, Barton, Gans & Markell, Baltimore, Md., for defendant and third-party plaintiff in Admiralty No. 4931.

Randall C. Coleman and Thomas W. Jamison, III, Ober, Williams & Grimes, Baltimore, Md., for defendant and third-party plaintiff in Admiralty No. 4997.

Peter Parker, Semmes, Bowen & Semmes, Baltimore, Md., for defendants and third-party plaintiffs in Civ. Nos. 15956 and 15957.

Southgate L. Morison and Richard R. Jackson, Jr., Ober, Williams & Grimes, Baltimore, Md., for defendant and third-party plaintiff in Civ. No. 17105.

Southgate L. Morison, Baltimore, Md., for defendant and third-party plaintiff in Civ. No. 17705.

Louis G. Close, Jr., Due, Whiteford, Taylor & Preston, Baltimore, Md., for third-party defendants in Admiralty Nos. 4897 and 4997.

Southgate L. Morison, Baltimore, Md., for third-party defendant in Admiralty No. 4931.

Herbert F. Murray, Baltimore, Md., for third-party defendant Maryland Port Authority in Admiralty No. 4997.

Randall C. Coleman, Baltimore, Md., for third-party defendants in Civ. Nos. 15956 and 15957.

John H. Skeen, Jr., Skeen, Wilson & Gilbert, Baltimore, Md., for third-party defendant in Civ. No. 17105.

W. Hamilton Whiteford, Due, Whiteford, Taylor & Preston, Baltimore, Md., for third-party defendant in Civ. No. 17705.

David R. Owen, of Semmes, Bowen & Semmes, Baltimore, Md., amicus curiae.

FRANK A. KAUFMAN, District Judge.

In all seven of these cases an employee of a stevedoring company has filed suit in this Court against a shipowner, claiming damages for injuries suffered by him in the performance of his work.[1] In each case the shipowner (defendant) has answered, denying his liability and, in addition, has impleaded the stevedoring company as third-party defendant alleging, *inter alia*, that any injuries sustained by plaintiff were due to the failure of the stevedoring company to perform its work in a careful and workmanlike manner, as it was obligated

---

1. In Admiralty No. 4897, plaintiff allegedly was assisting in the discharge of cargo from a ship onto a Maryland pier. It is claimed that plaintiff was landing a trailer, which had been discharged from the vessel, on the pier, when a piece of welded metal broke from the trailer and fell on plaintiff's foot.

In Admiralty No. 4931, plaintiff is alleged to have been injured when, while assisting on a Maryland pier in the discharge of lumber from a vessel, he was struck by the lumber, knocked off the pier against the vessel and into the water.

In Admiralty No. 4997, plaintiff allegedly was injured while working in a gondola car on a Maryland pier, in which he was assisting in discharging drafts of steel cargo from the car incidental to the stowage of cargo on board a vessel. It is further alleged that a hook affixed to a gantry crane was dropped into the gondola car causing plaintiff to be thrown from the car onto the pier.

In Civil No. 15956, it is alleged that the decedent, husband of plaintiff, while loading cargo on a vessel, was fatally injured when he was struck by a swinging draft of cargo which settled back into a railroad gondola car on a Maryland pier in which he was working. At the time of the accident, the decedent is said to have been hooking on steel beams cargo in the railroad gondola car.

In Civil No. 15957, which has been consolidated with Civil No. 15956 for trial, plaintiff, said to have been injured while working on a Maryland pier, has alleged the same acts of negligence by defendant as were alleged in Civil No. 15956.

In Civil No. 17105, plaintiff allegedly was struck by steel rods and pinned between the rods and a railroad car on a Maryland pier beside which he was standing. It is claimed that plaintiff was assisting in the unloading of cargo from a ship onto a gondola car on the pier.

In Civil No. 17705, it is alleged that plaintiff, while working on a Maryland pier unhooking cargo from a ship, was struck by cartons which fell from a cargo pallet which in turn was being transported from the ship to the pier.

to do, and that therefore the shipowner is entitled to full indemnity from the stevedoring company for the amount of any recovery by the employee plaintiff against the defendant shipowner. The third-party defendant stevedoring companies have each filed motions to dismiss the respective third-party complaints against them on the ground that the Maryland Workmen's Compensation Act, 8B Md.Ann.Code art. 101, § 15 (1964 Replacement Vol.), provides that the liability imposed upon a complying employer is exclusive and that they are each complying employers under that act.[2] Each of the seven third-party defendants contends that, as an employer, it is thus not subject to any further liability whatsoever as a third-party defendant, under an implied warranty of indemnity, or otherwise.[3] The Court of Appeals of Maryland has so held in American Radiator & Stand. San. Corp. v. Mark Eng. Co., 230 Md. 584, 187 A.2d 864 (1963); Flood v. Merchants Mut. Ins. Co., 230 Md. 373, 187 A.2d 320 (1963); Cox v. Sandler's, Inc., 209 Md. 193, 120 A.2d 674 (1956); Hart v. Sealtest, 186 Md. 183, 46 A.2d 293 (1946); Baltimore Transit Co. v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (1944).

The claims in all seven cases are maritime in nature. Spann v. Lauritzen, 344 F.2d 204 (3d Cir. 1965), cert. denied, 382 U.S. 938, 86 S.Ct. 386, 15 L.Ed.2d 348 (1965); Thompson v. Calmar S.S. Corp., 331 F.2d 657, 659 (3d Cir. 1964), cert. denied, 379 U.S. 913, 85 S.Ct. 259, 13 L.Ed.2d 184 (1964), in which the Circuit Court said: "If the longshoreman is actually engaged in the service of the ship, it is immaterial whether the accident caused by the vessel's unseaworthiness occurs away from the ship or on the pier"; Hagans v. Ellerman & Bucknall S.S. Co., 318 F.2d 563, 567, 582 (3d Cir. 1963) in which the "accident occurred a hundred feet away from the vessel in a building on a pier"; Koninklyke Nederlandsche, Etc. v. Strachan Shipping Co., 301 F.2d 741 (5th Cir. 1962), rehearing denied, 304 F.2d 545 (5th Cir. 1962), cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962); Revel v. American Export Lines, Inc., 162 F.Supp. 279, 281 (E.D.Va.1958), aff'd, American Export Lines, Inc. v. Revel, 266 F.2d 82, 84 (4th Cir. 1959) (in which the "[p]laintiff was working on the pier").

Three of the seven cases were instituted as libels in admiralty. The other four cases are actions on the "law

2. Claims have been filed under the Maryland Workmen's Compensation Act, 8B Md.Ann.Code art. 101, §§ 1–84 (1964 Replacement Vol.), in connection with the injuries alleged in all of the seven cases at bar. Claims have been additionally filed under the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1957), with regard to the injuries alleged in Civil Nos. 15956 and 15957. Those latter two claims were denied by John P. Traynor, Deputy Commissioner, United States Department of Labor, on the ground that the injuries were not covered by the Federal act. The orders of the Deputy Commissioner in both cases were approved by Judge R. Dorsey Watkins of this Court and judgments were therefore entered by him therein for the respondent Deputy Commissioner. Johnson v. Traynor (Admiralty No. 4704 in this Court) and Klosek v. Traynor (Admiralty No. 4705 in this Court), 243 F.Supp. 184 (D.Md.1965).

Appeals in these two cases are currently pending in Nos. 10298 and 10299 before the United States Court of Appeals for the Fourth Circuit. If that Court should reverse the holdings of Judge Watkins, and rule that the Federal act applies and the Maryland act does not, then the two cases will be governed by Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and the motions to dismiss of the third-party defendants in them are dismissed herein for that reason. If, however, it is held on appeal that the Maryland act applies, then the motions to dismiss of the third-party defendants in the two cases raise the same two questions as do the similar motions in the other five cases.

3. There is neither any express warranty of indemnity from the stevedoring company to the shipowner nor any waiver of indemnity by the shipowner, in any of the seven cases.

side" of this Court. This difference is without legal distinction, insofar as the "substantive" issues common to all seven cases are concerned. "For it is now clear that the maritime law controls all 'substantive' issues in the disposition of maritime claims regardless of the form or forum of suit. * * * This is so whether * * * [the] suit * * * be treated as a libel in admiralty * * * or as an action on the 'law side' of the federal court * * * [or] if the suit * * * had been brought in a state court under the saving clause." Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2d Cir. 1963).

Two questions are raised in all seven cases:

I. Does the Maryland Workmen's Compensation Act preclude a shipowner from enforcing an existing contractual indemnity running in its favor from a stevedoring company when the latter is a complying employer under that act?

II. In the absence of an express indemnity undertaking, does the law imply an indemnity undertaking by the stevedoring company in favor of the ship, when the stevedoring company is a complying employer under the Maryland act?

## I.

In American Radiator & Stand. San. Corp. v. Mark Eng. Co., supra, 230 Md. 584, 187 A.2d 864, American Radiator employed Mark Engineering to repair American's elevated water tank in Baltimore. Mark, in a written agreement, undertook that its workmanship would be of good quality and its work free from unnecessary hazards. Lambert, a painter employed by a subcontractor of Mark, was injured while working on American's tank. Lambert was paid compensation under the Maryland act. The Court of Appeals of Maryland considered the case on the basis that Mark was the "statutory employer" under the act. Lambert, and the insurance company which paid Lambert's claim, sued American for damages for failure to provide Lambert a safe place to work. American impleaded Mark as a third-party defend-

ant alleging that Mark "had breached its contract [with American] by failing to perform its work in a careful and workmanlike manner and, as a result, was obligated to indemnify American for any liability it had as a result of the failure of the work." The trial court sustained Mark's demurrer to American's third-party complaint, without leave to amend. The Court of Appeals affirmed. Judge Hammond reviewed the earlier holdings of the Court in Standard Wholesale Phosphate & Acid Works, Inc. v. Rukert Terminal Corp., 193 Md. 20, 65 A.2d 304 (1949) and Baltimore Transit Co. v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (1944) as well as the opinion of the Supreme Court of the United States in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and wrote:

In 1948, in Standard Wholesale Phosphate & Acid Works, Inc. v. Rukert Terminal Corporation, * * *, this Court construed the Longshoremen's and Harbor Workers' Compensation Act and, finding no controlling federal decisions on the point, held that the act made the obligation of a conforming employer to pay compensation to an injured employee exclusive and in place of all other liability to the employee or anyone else otherwise entitled to recover damages from the employer, at law or in admiralty, on account of the injury or death of the employee. From this the Court concluded that, *in the absence of an express contractual agreement to assume an obligation of indemnity, as distinguished from an implied or quasi-contractual obligation,* the act foreclosed all right to contribution of indemnity from the employer. [Emphasis added].

\* \* \* \* \* \*

In 1956, the Supreme Court in a five to four decision, in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., * * *, held, in a suit by an employee of a stevedoring contractor to recover from a ship owner damages for in-

jury resulting from improper stowage of cargo aboard the ship, that the ship owner could maintain a third party complaint against the contractor on an implied obligation to indemnify arising from its contractual undertaking to the ship owner to stow the cargo properly and safely. The majority of the Court found the Longshoremen's and Harbor Workers' Compensation Act not to bar recovery from the employer on an implied agreement to indemnify *any more than it would on an express agreement.* The Supreme Court's construction of the Act was diametrically contrary to that of this Court in Rukert. Ryan has been followed by three other cases in the Supreme Court in which the Court held unanimously that the Act permitted recovery against the employer on its implied agreement to indemnify. [Citing, in a footnote after the word "indemnify," Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960)]. [230 Md. at 586–587, 187 A.2d at 864–865 (Emphasis added)].

Judge Hammond also wrote:

American urges us to apply the reasoning and conclusions of *Ryan* to the interpretation of the Maryland Workmen's Compensation law because that law provides, in language indistinguishable in substance from that of the Longshoremen's and Harbor Workers' Compensation Act, that a conforming employer who pays compensation shall have no other and further liability on account of the accidental injury of his employee. It is true that the Supreme Court's interpretation of the meaning and effect of the federal act is binding on this Court, as was recognized in *Rukert* at page 24 of 193 Md., at page 305 of 65 A.2d. ("In construing that act, we

are bound by authoritative construction placed upon it by the federal courts.") It is equally true that the federal courts, including the Supreme Court, are bound by the interpretation given by this Court to a Maryland statute, absent a federal constitutional question. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 * * * [1938]. [230 Md. at 588, 187 A.2d at 865–866].

And, Judge Hammond commented:

Since 1948, when *Rukert* was decided, employers in Maryland have been entitled to rely on the assumption that they would not be liable for or on account of an injury to an employee, beyond payment of compensation, *unless they expressly waived immunity by agreeing to assume an obligation for contribution or indemnity.* We are not persuaded that the reasoning and results of *Schriefer* and *Rukert* were wrong or that the law as established by the decisions in those cases should be overturned, unless it be done prospectively by the Legislature. [230 Md. at 590, 187 A.2d at 867 (Emphasis added)].

No case decided after *American Radiator* provides any additional guidance by the Court of Appeals of Maryland with regard to the answer to Question I in this case. *American Radiator* would seem to require Question I to be answered in the negative. The Maryland act does not preclude the shipowner from asserting the liability of the stevedoring contractor if there is in existence an indemnity undertaking running from the latter in favor of the former. *American Radiator* holds that where Maryland law is applicable, there is no implied indemnity undertaking running from a party in the position of the stevedore to a party in the position of a ship; however, that opinion also indicates that an express contractual indemnity obligation undertaken by a party in the position of the stevedore in favor of a party in the position of the ship will be honored and enforced by the Maryland courts.

## II.

In Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. 124, 76 S.Ct. 232, the Supreme Court posed these two questions:

1.  The first question is whether the Longshoremen's Compensation Act precludes the assertion by a shipowner of a stevedoring contractor's liability to it, where the contractor is also the employer of the injured longshoreman. [350 U.S. at 128, 76 S.Ct. at 234.].

2.  The other question is whether, in the absence of an express agreement of indemnity, a stevedoring contractor ·is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo. [350 U.S. at 132, 76 S.Ct. at 237].

The Supreme Court answered "the first question in the negative and the second in the affirmative." 350 U.S. at 125, 76 S.Ct. at 233. The Court stated that the agreement between the stevedore and the ship required the former to

> stow * * * properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. [350 U.S. at 133–134, 76 S.Ct. at 237].

In Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958), the Supreme Court said that the *Ryan* doctrine applies not only "to the handling of cargo, * * *, but also to the use of equipment incidental thereto * * * " and that "[w]hile the stevedoring contract contained no express indemnity clause, it obligated respondent 'to faithfully furnish such stevedoring services as may be required,' and to provide all necessary labor and

supervision for 'the proper and efficient conduct of the work.' As this Court said in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, such language constitutes 'a contractual undertaking to [perform] "with reasonable safety,"' 350 U.S., at 130, 76 S.Ct. at 235, and to discharge 'foreseeable damage resulting to the shipowner from the contractor's improper performance.' 350 U.S., at 129, footnote 3. 76 S.Ct. at 235." 355 U.S. at 565, 567, 78 S.Ct. at 440. (Footnotes omitted).

In Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), the Court stated:

> A majority of the Court ruled in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., * * *, that where a shipowner and stevedoring company entered into a service agreement, the former was entitled to indemnification for all damages it sustained as a result of the stevedoring company's breach of its warranty of workmanlike service. And see Weyerhaeuser S.S. Co. v. Nacirema Operating Co., * * * The facts here are different from those in the *Ryan* case, in ·that this vessel had been chartered by its owners to Ovido Compania Naviera S.A. Panama, which company entered into the service agreement with this stevedoring company. The ·contract, however, mentioned the name of the vessel on which the work was to be done and contained an agreement on the part of the stevedoring company "to faithfully furnish such stevedoring services."

> We think this case is governed by the principle announced in the *Ryan* case. The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries. Restatement, Law of Contracts, § 133. Moreover, as we said in the *Ryan* case, "competency and

safety of stowage are inescapable elements of the service undertaken." 350 U.S., at page 133, 76 S.Ct. at page 237. They are part of the stevedore's "warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." Id., 350 U.S. at pages 133–134, 76 S.Ct. at page 237. See MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 [1916].

We conclude that since the negligence of the stevedores, which brought the unseaworthiness of the vessel into play, amounted to a breach of the warranty of workmanlike service, the vessel may recover over. [358 U.S. at 428–429, 79 S.Ct. at 448.]

In Waterman S.S. Co. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), the employee of the stevedoring company suffered injuries, at the port of Philadelphia, by the collapse of a column of hundred-pound bags which was allegedly improperly loaded on the ship in the Phillipines several weeks earlier by a stevedore unrelated to the Philadelphia stevedore-employer of the injured man. The Supreme Court applied the *Ryan* doctrine, stating:

As an affirmative defense of the respondent stevedore alleged that there had been no direct contractual relationship between it and the petitioner covering the stevedoring services rendered the *Afoundria* in Philadelphia. At the trial the parties stipulated that this allegation was correct, it appearing that the consignee of the cargo, not the petitioner, had actually engaged the respondent to unload the ship. The District Court directed a verdict for the respondent, holding that a shipowner has no right of indemnity against a stevedore under the circumstances alleged in the absence of a direct contractual relationship between them. The Court of Appeals for the Third Circuit affirmed in an *en banc* decision, three judges dissenting. Certiorari was granted to consider whether in a situation such as this the absence of a contractual relationship between the parties is fatal to the indemnity claim. 362 U.S. 926, 80 S.Ct. 754, 4 L.Ed.2d 745.

In Ryan Stevedoring Co. v. Pan-Atlantic Corp., * * * it was established that a stevedoring contractor who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's breach of his warranty to perform the obligations of the contract with reasonable safety. This warranty of workmanlike service extends to the handling of cargo, as in Ryan, as well as to the use of equipment incidental to cargo handling, as in Weyerhaeuser S.S. Co. v. Nacirema Co., * * * The warranty may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness. Crumady v. The J. H. Fisser, * * *. The factual allegations of the third-party complaint in the present case comprehend the latter situation.

In the *Ryan* and *Weyerhaeuser* cases considerable emphasis was placed upon the direct contractual relationship between the shipowner and the stevedore. If those decisions stood alone, it might well be thought an open question whether such contractual privity is essential to support the stevedore's duty to indemnify. But the fact is that this bridge was crossed in the *Crumady* case. There we explicitly held that the stevedore's assumption of responsibility for the shipowner's damages resulting from unsafe and improper performance of the stevedoring services was unaffected by the fact that the shipowner was not the party who had hired the stevedore. That case was decided upon the factual premises that the stevedore had been engaged not by the shipowner, but by the party operating the ship under a charter.

* * * * * *

This reasoning is applicable here. We can perceive no difference in principle, so far as the stevedore's duty to indemnify the shipowner is concern-

ed, whether the stevedore is engaged by an operator to whom the owner has chartered the vessel or by the consignee of the cargo. Nor can there be any significant distinction in this respect whether the longshoreman's original claim was asserted in an *in rem* or an *in personam* proceeding. In the *Ryan* and *Weyerhaeuser* cases *in personam* liability was asserted. In the *Crumady* case the injured stevedore had brought an *in rem* proceeding. The ship and its owner are equally liable for a breach by the contractor of the owner's nondelegable duty to provide a seaworthy vessel. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 [1903]; cf. Continental Grain Co. v. Barge, FBL-585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 [1960]. The owner, no less than the ship, is the beneficiary of the stevedore's warranty of workmanlike service. [364 U.S. at 422–425, 81 S.Ct. at 201. (Footnotes omitted)].

*Ryan* has also been discussed, confirmed and followed by the Supreme Court in Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) and Italia Soc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed. 2d 732 (1964). In the former case the Court in a seven-to-two decision stated (373 U.S. at p. 413–414, 83 S.Ct. at p. 1352) that in *Ryan*

we were faced with the question of whether a shipowner who was forced to pay damages to a longshoreman injured by the unsafe storage of cargo could recover indemnity from the stevedoring company for whom the longshoreman worked. Even in the absence of an indemnity provision, the Court held that the stevedoring company was liable only to the shipowner because it had promised to store the cargo safely. The Court was not convinced by arguments that its result made the economic burden of the longshoreman's recovery fall on the stevedoring employer contrary to the purpose of the Act.

In the latter, the Court stated (376 U.S. at p. 315, 84 S.Ct. at p. 749):

The issue presented is whether the warranty is breached where the stevedore has non-negligently supplied defective equipment which injures one of its employees during the course of stevedoring operations.

The Court, in a six-to-three decision, answered the question in the affirmative.

■ The *Ryan* doctrine unquestionably is applicable in the seven cases at bar,[4] unless it is rendered inapplicable by the Maryland act's provision that the liability imposed by the act upon a complying employer is exclusive. The Supreme Court of the United States has not yet considered the effect of a state workman's compensation act upon the *Ryan* doctrine. The question has, however, been litigated in varying degrees in cases which have been decided by the Courts of Appeals for the Third, Fourth and Fifth Circuits.

4. The following cases in the Court of Appeals for the Fourth Circuit involve consideration of or reference to the *Ryan* doctrine: American Export Lines v. Norfolk Shipbuilding & Dry. Corp., 336 F.2d 525 (1964); Smith v. United States, 336 F.2d 165 (4 Cir., 1964); American Export Lines v. Atlantic & Gulf Stevedores, 313 F.2d 414 (4 Cir., 1963), cert. denied, 373 U.S. 924, 83 S.Ct. 1525, 10 L.Ed.2d 422 (1963); Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 311 F.2d 663 (4 Cir., 1962); Rederi A/B Dalen v. Maher, 303 F.2d 565 (4 Cir., 1962); Smith v. Jugosalvenska Linigska Plovidea, 278 F.2d 176 (4 Cir., 1960); General Electric Company v. Moretz, 270 F.2d 780 (4 Cir., 1959); American Export Lines, Inc. v. Revel, 266 F.2d 82 (4 Cir., 1959); and Calmar S. S. Corp. v. Nacirema Operating Co., 266 F.2d 79 (4 Cir., 1959), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959). The following cases in the District Court for the District of Maryland involve consideration of or reference to the *Ryan* doctrine: Ray v. Compania Naviera Continental, S.A., 203 F.Supp. 206 (D.C., 1962); Wyborski v. Bristol City Line of Steamships, Ltd., 191 F.Supp. 884 (D.C., 1961); Oleszcuk v. Calmar S. S. Corp., 164 F.Supp. 628 (D.C., 1958), reversed 266 F.2d 79 (4th Cir. 1959), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959).

In *Koninklyke Nederlandsche, Etc.* v. *Strachan Shipping Co.,* supra, 301 F.2d 741, a longshoreman, employed by a stevedoring company, sued the shipowner for injuries sustained while on a Houston dock helping to load the ship. The longshoreman obtained a settlement under the Texas Workmen's Compensation Act. The shipowner filed a third-party complaint against the stevedoring company seeking indemnity for any recovery by the longshoreman "on the ground that * * * [the stevedore] had breached its implied contractual warranty to perform services in a workmanlike fashion." 301 F.2d at 743. The stevedoring company moved for summary judgment on the ground that its payments to the longshoreman in compliance with the Texas act barred the ship's third-party action. The District Court granted the motion; on appeal, the Court of Appeals for the Fifth Circuit in a two-one decision reversed. The majority held that the contract between the ship and the stevedore was a maritime contract and that the *Ryan* doctrine of implied indemnity established a general admiralty rule which was applicable in that case.[5] The dis-

5. The majority opinion includes the following passages:

There can be little question that the stevedoring contract is a maritime contract and that breach of an implied warranty to perform services in a workmanlike fashion is governed by federal maritime law. In general, the fact that a contract is maritime is not dispositive of the law to be applied. In the absence of a federal statute, a judicially fashioned federal rule, or a need for uniformity throughout admiralty jurisdiction, relative state law may be applied. *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.,* 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337. As the Court there framed the issue in a case of first impression with respect to maritime insurance contracts.

" * * * in the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress. See, e. g., *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 [1942]. Consequently the crucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?" 348 U.S. at 314, 75 S.Ct. at 370.

While the Court there held that maritime insurance contracts should be governed by state law, there can be no doubt that a clearly established federal judicially-fashioned maritime rule governs a stevedore's breach of warranty to perform services in a workmanlike fashion. In a series of recent cases, the Supreme Court has held that where a shipowner is damaged by a personal injury recovery against it, which damage was occasioned by the negligence of the

stevedore in the performance of his contractual undertakings, then a contract action for breach of warranty will lie against the stevedore. See *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.,* * * * ; *Weyerhaeuser Steamship Co.* v. *Nacirema Operating Co.,* * * * ; *Crumady* v. *The Joachim Hendrik Fisser,* * * *. The action is not a derivative one from the basis of the suit by the injured party against the shipowner, but is based purely on damage resulting from a breach of contract. Once it is held that a personal injury judgment is damage recoverable in such a contract action, this judgment has the exact same status as, for example, damage resulting from injury to the ship itself. The question then is whether it arose as the result of the stevedore's breach of warranty and whether any conduct on the part of the shipowner would bar recovery. We do not see the relevance of the position of the injured party or his personal alternative remedies under state or federal compensation acts. The court below attached weight to the fact that the Supreme Court in Ryan first made the determination of whether the federal Longshoremen's Act permitted recovery for a breach of warranty. From this it argued that a similar determination must be made with respect to an applicable state compensation act. This by no means follows. Federal statutes, if constitutional, are paramount to any judicially-fashioned rules of admiralty; state laws are not. See *Wilburn Boat,* supra. Thus while a Congressional direction denying the contract recovery would be decisive, a state rule would not.

\* \* \* \* \* \* \*

Since we find no federal constitutional, statutory or other rule contrary to the federal rule fashioned in *Ryan,* supra,

senting opinion was based upon the position that *Ryan* did not apply because the Texas courts had held that a complying employer under the Texas act is protected from all other liability.[6]

Following the Fifth Circuit's opinion in *Koninklyke*, a petition for a rehearing was filed by the stevedoring company. In denying the petition, the Fifth Circuit stated that the Texas act could not

---

we conclude that Royal's contractual rights against Strachan are not affected by the state rules governing the injured party's compensation rights and remedies. The holding in Ryan was not based on such marginal grounds that state law to the contrary would upset its rationale and require a decision in favor of Strachan. We note that under the rationale of Wilburn Boat, supra, a federal rule is only established when the Court is of the opinion that there is a substantial need for a uniform admiralty rule—a result not consistent with the appellee's position here. We also note that Ryan was decided in the context of the unusual admiralty rule that an injured longshoreman can recover against the shipowner without a showing of the shipowner's negligence—i. e., for unseaworthiness—a possibility not contemplated by the Texas exclusive remedy clause. In the context of the normal industrial accident covered by state workman's compensation, the only ground for a common-law action against a third party is upon a showing of that party's negligence. Under such circumstances, we are of the opinion that Ryan remains applicable and that the lower court was in error when it dismissed Royal's third party complaint. [301 F.2d at 743–45.]

The Court in the *Koninklyke* case also discussed in some detail the opinion of the Court of Appeals for the Fourth Circuit in American Export Lines, Inc. v. Revel, 266 F.2d 82 (4th Cir. 1959), affirming the District Court's opinion in 162 F.Supp. 279 (E.D.Va.1958) and commented that the court in that case was faced with the issue of a stevedoring contract indemnity for an accident which took place on the Norfolk docks. While the third-party defendant raised the issue of the indemnity being barred by the Virginia Workmen's Compensation Act, the district court dismissed their contention with a peremptory citation to Ryan, 162 F.Supp. at 284, and the Court of Appeals considered Ryan and the subsequent Supreme Court cases cited, supra, as controlling without even discussing the possible effect of state law. As the Court there said: "We find in this record no basis for a legally significant distinction from Crumady [* * *] * * *" 266 F.2d at 87. While the appellee argues

that no Virginia court had considered the issue of a contract indemnity being barred by the Virginia Workmen's Compensation Act such that the present conflict between state and federal law was not squarely presented, the possibility of such a conflict was argued by the parties and summarily dismissed by the Court for the identical reasons we have adopted here. [301 F.2d at 745].

6. The dissenting opinion in *Koninklyke* quoted and adopted the following passage from the opinion of the District Court which the majority Fifth Circuit opinion reversed:

"In Ryan and progeny the accidents or injuries were aboard ship and the federal compensation act applied. Here the injury was sustained on a dock. * * * I do not believe the Supreme Court held in Ryan and related cases that Congress, in passing the federal compensation act to fill a gap in compensation coverage, intended at the same time to limit valid state compensation coverage in any manner. As I understand Ryan, there is an implied contract to stevedore properly, the breach of which is actionable if, and only if, the applicable compensation act does not prevent it. True, the Court's thinking as to *why* the federal act does not bar recovery could be applied as well to the Texas act with the same result, but Texas courts have not chosen to follow this thinking. Apparently convinced legislative policy so compels, Texas courts hold compliance by employer with the Texas Compensation Act terminates all liability of employer arising out of covered injuries to employees. West Texas Utilities v. Renner, 32 S.W. 264 (Ct.Civ.App.1930), 53 S.W.2d 451 (Com. App.1932); Westfall v. Lorenzo Gin Company, 287 S.W.2d 551 (Ct.Civ.App. 1956, no writ history); McCormick v. United States, 134 F.Supp. 243 (S.D. Tex.1955).

"In short I believe that when the federal law filled a gap in workmen's compensation coverage and allowed indemnity recovery it did not oust state law where validity [sic] in force; neither did it limit the force of this valid state law in any manner. States differ as to allowance of indemnity actions but Texas says no." [301 F.2d at 747.]

supersede or cut off the ship's rights under the *Ryan* doctrine.[7]

General Electric Company v. Moretz, 270 F.2d 780 (4th Cir. 1959), cert. denied, Mason & Dixon Lines, Inc., v. General Electric Co., 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960), involved a suit by an employee of a common carrier against General Electric for injuries allegedly suffered while driving a trailer truck which had been negligently loaded by General Electric. General Electric denied the negligence and filed a third party complaint against the common carrier alleging, *inter alia*, that it was entitled to indemnity from the carrier "because of the latter's failure to secure the load safely before sending it on the road." 270 F.2d at 785. The District Court held that since there was no express contractual indemnity, General Electric was not entitled to indemnity from the carrier. After discussing the *Ryan, Weyerhaeuser* and *Crumady* opinions of the Supreme Court and comparing the positions of the shipowner in those cases to that of General Electric in the *Moretz* case, and the position of the stevedore in those cases to that of the common carrier in the *Moretz* case, Judge Soper reversed, holding that General Electric was entitled to indemnity from the common carrier. In so doing, he noted that the *Ryan* rule had been applied in Calmar Steamship S.S. Corp. v. Nacirema Operating Co., 266 F.2d 79 (4th Cir. 1959), and in American Export Lines, Inc. v. Revel, supra, 266 F.2d 82 (4th Cir. 1959).[8]

Judge Soper dealt at some length in *Moretz* with the contention of the third-party defendant common carrier that the Tennessee Workmen's Compensation Act granted to it as an employer relief from all liability for injuries to its employee, other than as provided by the act, including the third-party relief sought by General Electric. After reviewing decisions by a number of state courts construing state compensation acts to permit third-party relief where indemnity obligations had been undertaken, discussing the Supreme Court's opinion in *Ryan*, and stating his doubt that Tennessee would construe its compensation act so as to refuse to honor an indemnity agreement, Judge Soper concluded:

We have no reason therefore to suppose that Tennessee will not follow the rule so well established in other jurisdictions which allows indemnity in cases of contract between the employer and the third person; and we do not reach the constitutional question whether the workmen's compensation act of a state may be so construed as to nullify or modify the obligations of a common carrier to a shipper which have been assumed in accordance with acts of Congress passed under the commerce clause of the Federal Constitution, Const. art. 1, § 8, cl. 3. [270 F.2d at 791].

In Hagans v. Ellerman & Bucknall S.S. Co., 318 F.2d 563 (3d Cir. 1963), an employee of the stevedoring company was injured on a pier in Philadelphia while he was engaged in discharging cargo from a ship. In *Hagans*, the Court ap-

---

7. The Court commented as follows:

Thus the appellee's only logical argument from the basis of the Texas cases is that if the issue of an implied contractual warranty for workmanlike performance came before the Texas courts, they would hold that it did not exist. It is at this point, however, that maritime law controls. Ryan, supra, conclusively decided that a stevedoring company gives an implied contractual warranty to perform services in a workmanlike fashion; it is, therefore, no longer open to the Texas courts to determine otherwise no matter what they might decide with respect to contracts controlled by state law. Having found such a warranty, it is no longer open to the appellee to argue that indemnity is "indirect" in terms of the Renner case. Nor do we see under any circumstances how Texas could cut off Royal's contractual rights in the absence of federal statutory authority to that effect once a judicially-established maritime rule prevails. [304 F.2d at 547–548 (1962)].

8. The *Revel* case is discussed in footnote 5, supra.

plied *Ryan* and rejected the argument that the *Ryan* doctrine could be deprived of its uniform application by state legislation.[9]

The *Revel, Moretz, Koninklyke* and *Hagans* decisions all point in one direction, namely, that under general maritime law as expounded by *Ryan*, there exists an implied indemnity obligation running from the stevedore to the ship which must be recognized and enforced to the same extent as an express indemnity obligation undertaken by the stevedore in favor of the ship. Furthermore, the *Moretz, Koninklyke* and *Hagans* opinions indicate that the provisions of a state workmen's compensation law do not relieve the stevedore from its indemnity obligations to the ship under general maritime law.

It is true that in no case cited to or found by this Court have the highest courts of Texas, Tennessee, Virginia, Pennsylvania or of any other state spoken as clearly in opposition to *Ryan* as has the Court of Appeals of Maryland in the *American Radiator* case. But *American Radiator* did not involve a claim which was maritime in nature as are the claims in all seven of the instant cases.

The argument has been made on behalf of the stevedores that Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires this Court to follow the decision of the Maryland court in *American Radiator* since the Maryland Compensation Law rather than the Federal Compensation Law is involved. But this contention must be and is clearly rejected by this Court. The *Erie* doctrine does not require the federal courts in cases which are maritime in nature to enforce substantive state law such as that embodied in *American Radiator*, which is in conflict with a general maritime rule of law, such as the *Ryan* doctrine.[10]

9. The Third Circuit stated as follows in *Hagans*:

> That in this case Hagans was a beneficiary under the Pennsylvania Workmen's Compensation Act, and in Ryan the Longshoremen's and Harbor Workers' Compensation Act was invoked, does not alter the application of the decision in Ryan. The important consideration is that Ellerman's claim against Atlantic is founded upon a contractual relationship in which Atlantic gave Ellerman a warranty to discharge the cargo in a reasonably safe manner. It is not grounded on any claim for contribution based upon tort or upon any duty which Atlantic owed Hagans.
>
> Atlantic further argues, in effect, that stripped of its maritime nature, Hagans's claim against Ellerman is aborted by § 203 of the Pennsylvania Compensation Act of 1915. It implies that by the force of this section Ellerman is entitled to the status of a statutory employer and is thus excluded from any liability other than that permitted under the Pennsylvania Workmen's Compensation Act. Atlantic reasons that since Hagans had recovered a workmen's compensation award against it he may not look to Ellerman for damages and, of course, if Hagans has no right of recovery against Ellerman there is no ground for a claim by the latetr for indemnity against Atlantic. * * * [The] basic premise [of that contention] is incorrect for

Hagans's claim is maritime in nature. Since Hagans was injured ashore, the workmen's compensation to which he is entitled is governed by the Pennsylvania Workmen's Compensation statute, but this is not to say that it can bar him, a longshoreman in the service of the ship, from his right to seek a recovery from the vessel, based upon unseaworthiness. A state legislature cannot ordinarily contravene the right granted a maritime employee in an area which is exclusively within the federal jurisdiction. Southern Pacific Co. v. Jensen, 244 U.S. 205, 215–216, 37 S.Ct. 524, 61 L.Ed. 1086, (1917). While it may affect, alter or modify maritime law in limited areas, this is not one of those areas, particularly in the light of the Supreme Court's recent decisions affording longshoremen the protection of the absolute liability imposed upon ship owners for unseaworthiness. National uniformity dictates that the protection afforded by this maritime doctrine is not one which should be subject to variation with the particular state jurisdiction in which the injury occurs. [318 F.2d at 582–583].

10. In Stevens, Erie R. R. v. Tompkins And The Uniform General Maritime Law, 64 Harv.L.R. 246 (1950), the author at pp. 268–69 states:

> *Erie* imposed a duty upon diversity courts to apply the judicial precedents as

In Farrell Lines, Inc. v. Devlin, 211 Md. 404, 127 A.2d 640 (1956), involving injuries suffered by a man employed to work as a night relief mate aboard a ship in Baltimore harbor while certain of the ship's officers went ashore, the Court of Appeals of Maryland stated:

> Suits for damages for injuries occurring on navigable water, whether they be brought in an admiralty court, or the law side of a federal court, or in a state court, are controlled substantively by federal maritime law. The Supreme Court once again made this plain in Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 [1953], when it said: "While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of this Court." [211 Md. at 415, 127 A.2d at 645].

In Bell v. Tug Shrike, 332 F.2d 330, 332 (4th Cir. 1964), cert. denied, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964), Judge Soboloff stated as follows in a Jones Act suit:

> Whether or not the *Erie* doctrine is limited to diversity cases or also governs where federal jurisdiction is grounded in admiralty is a matter very much in dispute. * * * To our understanding this question is still unsettled. The Supreme Court appears to have adopted a flexible standard, applying in admiralty cases either maritime principles or state law, depending upon the nature of the case and the problems involved. The determining factor as to which law governs seems to be the availability of an admiralty rule which is generally accepted and clearly defined. Where such a rule exists it will prevail over conflicting local law, regardless of *Erie;* but where no admiralty rule has been clearly established, an admiralty court will, in the absence of legislation, hesitate to lay down a rule for uniform application in the face of conflicting possible choices. [Footnotes omitted].[11]

well as the statutes of the state in which they were sitting, but the *Erie* doctrine was not intended to subordinate federal control over maritime matters. On the contrary, maritime law should be considered to be a subject which so vitally affects "the interests, powers and relations of the Federal Government as to require uniform natural disposition rather than diversified state rulings." [quoting from United States v. Standard Oil Co., 332 U.S. 301, 307, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)].

Since the state court is bound under Garrett v. Moore-McCormack Co. to determine the substantive rights to a maritime action according to maritime principles, there will be no difference in result, if the state recognizes this obligation, regardless of the application of the *Erie* doctrine. However, if the state court injects local variations into the maritime law, the federal diversity court should not be bound thereby, since the *Sieracki* [citing Seas Shipping Co. v. Sieracki, [308] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)] decision requires that diversity courts look only to the maritime law when settling a maritime dispute.

Rights arising from the general maritime law are federally created rights because they are controlled by principles adopted by the admiralty courts in the exercise of constitutional power from an international law of the sea. The same considerations that required diversity courts to apply state precedents of common law under the *Erie* doctrine require that federal law courts follow the admiralty, not the state, decisions in cases within the maritime jurisdiction. [Footnotes omitted].

11. Judge Soboloff went on to cite, in 332 F.2d at 334 n. 12, Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) and Fitzgerald v. United States Line Co., 374 U.S. 16, 83 S. Ct. 1646, 10 L.Ed.2d 720 (1963). In Mitchell v. Trawler Racer, Inc., supra, 362 U.S. at 550, 80 S.Ct. at 933, Mr. Justice Frankfurter in a dissenting opinion stated:

No area of federal law is judge-made at its source to such an extent as is the law of admiralty.

In Fitzgerald v. United States Line Co., supra, 374 U.S. at 20, 83 S.Ct. at 1650, Mr. Justice Black commented:

Article III of the Constitution vested in the federal courts jurisdiction over ad-

■ The Supreme Court of the United States, in the *Ryan* case, established as a general principle of maritime law that there is an implied indemnity by a stevedore running in favor of a ship—a principle which the Maryland and federal courts alike are required to recognize in cases which are maritime in nature, to the same extent they would recognize an express indemnity. A stevedore who does not desire to be obligated under such an implied warranty can, it would seem, require a ship at the time the ship and the stevedore enter into their contract, expressly to waive its right of indemnity. Nothing in *Ryan* or in any other case brought to the attention of this Court would indicate that such an express waiver would not be fully enforced. See Italia Soc. v. Oregon Stevedoring Co., supra, 376 U.S. at 324–326, 84 S.Ct. 748, 11 L.Ed.2d 732, and on remand, 336 F.2d 124, 127 (9th Cir. 1964); Oleszcuk v. Calmar S.S. Corp., 164 F.Supp. at 632–33 (D.Md.1958). Where maritime jurisdiction does not exist, the Court of Appeals of Maryland, in situations in which Maryland law controls, has held that in order for a party in the position of the ship to have the benefit of an indemnity from a party in the position of the stevedore, the former must obtain an express contractual undertaking of indemnity from the latter. However, if federal maritime law controls, the reverse is true—the stevedore, even if he complies with the Maryland Workmen's Compensation Act, must expressly contract with the ship to avoid an indemnity obligation.

In the seven cases at bar, federal maritime law controls, and all courts, federal and state, are required to enforce the implied warranty of indemnity from the stevedore to the ship in the absence of an express waiver by the ship. No such express waiver exists in any of the seven cases before the Court. Applying Judge Soper's statement in the *Moretz* case, supra, 270 F.2d at 791 to these cases, this Court does not "reach the constitutional question [of] whether the [Maryland] workmen's conpensation act * * * may be so construed as to nullify or modify the obligations of a * * * [stevedore to a ship] which have been assumed in accordance with * * *, [general maritime law as enunciated in *Ryan* by the Supreme Court of the United States]." That question need not be decided here because the Court of Appeals of Maryland has not answered Question I, of the two questions posed in these cases, in the affirmative. That Court has not stated that it would not enforce an implied indemnity undertaking, if under applicable federal maritime law, one exists. That Court has only held that no such implied warranty exists in cases which are not maritime in nature and in which Maryland law controls. In the cases at bar, federal law, as enunciated by the Supreme Court of the United States in *Ryan,* holds that there is such an implied warranty in a case which is maritime in nature. That law governs in each of the seven cases before this Court since each of them presents controversies which are maritime in nature.

For the reasons herein stated the motions to dismiss of the third-party defendants, in all of the seven cases, are denied.

miralty and maritime cases, and since that time, the Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law. This Court has long recognized its power and responsibility in this area and has exercised that power where

necessary to do so. [Citing among other cases, Wilburn Boat Co. v. Fireman's Fund, Inc., supra, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, which was relied on heavily by the Fifth Circuit in Koninklyke Nederlandsche, Etc. v. Strachan Shipping Co., supra, 301 F.2d 741].